Yes, I'm Mr. Matthew Sharp on behalf of the Taylor Appellants and with me is Kevin Hanna-Rabbi who represents the Harm and Brooks Ewing Appellants. I'd like to reserve five minutes for rebuttal. So, our primary point as to why we believe the District Court committed error in granting a summary judgment is based upon the 150 negligent acts of physical trauma. And it's our position that those specific acts do not fall within the abuse exclusion. And primarily that's based upon the definition which says physical abuse. We believe the common ordinary meaning of the term abuse involves a level of intent. The arbitrator found based upon expert testimony that there was no... ...tough time seeing why you would automatically jump to what the arbitrator found. When American families called upon to defend your agreement or defend you and then pay the agreement, they are called upon to do that based on the complaint. Well, it's a combination of both. ...and a lead-up to the arbitrator and the arbitrator's final decision. And one may talk about thereafter whether one has a duty to pay after the arbitrator has ruled, but one can't talk about a duty to defend after the arbitrator has ruled. Well, it's... One can talk about whether one has a duty to defend based on the complaint filed. And it's expected facts reasonably available to the insurance company. I understand that. I looked at the complaint, and I looked at what you alleged in the complaint, and I guess I'm trying to figure out where is it you found physical abuse in your... ...not your complaint, sorry, in the complaint filed where it's physical abuse. Well, I would point to... Just point to one place. I would point to... Is it the extremely mean calling him names, chastising him? I think that's part of it. Well, it doesn't have anything to do with physical abuse. Well, I think that the context of the entire complaint... ...because I read paragraph 11 of the complaint. It's all about sexual assault. I read paragraph 18 of the complaint. It's all about sexual assault. There is one where he was pushed up the stairs with sexual assault. I look at paragraph 20. It's all about sexual assault. I look at paragraph 21. It's all about sexual assault. And there they call it heinous acts of sexual assault. I look down here. He was forced to drink vodka. Is that what you're arguing about? I think that would be the context. Is that the best you've got? I mean, I'm trying to find in the complaint where you get to this physical abuse. Well, I would say two points, Your Honor. First of all, I didn't control what was in your complaint. I understand you don't control it because you didn't file it, but you got to defend it nonetheless. If you're going to get to the insurance company, well, I think that's why in the Alda case and others you look to extrinsic facts as well. The extrinsic facts were given to American family along the way, which I didn't find in your brief, which would make it different than the complaint. Well, the facts that were available to them were those that were ultimately found by the arbitrator. I'll just admit it. That isn't enough. When you're after the insurance company, you've got to show when it is they know certain facts. We're not to the point of the arbitration. At the arbitration, we're deciding the case. At that point, we may decide that they had a duty to pay. But we're not looking at duty to defend, so give me some facts. Well, I think it's contextual, and I will give you facts. I mean, my analysis would be, as the insurance company, when you look at this complaint, if the plaintiffs can't prove sexual assault, is there a basis to recover? Our point would be, yes, there's a basis to recover. It's negligence. Just a minute. I mean, it's been just a minute. This complaint is totally based on sexual assault, except a couple of places where I talked. And it's totally sexual assault, all that negligence stuff and what the parents or parents didn't do is all derived from the sexual assault. And so the insurance company, in order to pay it all, has got to come up with something in there they've got to defend against. That's what I'm trying to get you to focus on. Well, I'm trying to focus on that, but I think that the issue, which I would point to, is the drug use, which is separate. There was allegations in the complaint regarding the use of spice, which was separate from allegations regarding the sexual assault or anything that suggests that they made him use the spice. I agree. So, you don't have to. Well, I didn't find it. I saw where he had to drink some vodka, but I didn't find anything where he was forced to use the spice. I got stuff where they used the spice and then assaulted him. I'm sorry. In paragraph 29 of the complaint, that's paragraph 29. That's sort of the record, 59, the Treatment Center and Determined Plaintiff had been introduced to drugs namely spice by defendant Taylor and defendant Clark. Now, that's your allegation. That's the claim I'd center and found. That would be my primary allegation. That's correct. All right. And I now know where you are there. Now I take this and I look at the language of the policy. The language of the policy says, we will not cover any bodily injury or property damages rising out or resulting from, and then it decides what abuse is. Abuse is sexual molestation or contact, corporal punishment, physical or mental abuse of a person. So, if in fact they're not going to defend anything or cover bodily injury as it relates to abuse, and abuse is sexual molestation or contact, abuse is corporal punishment, abuse is physical or mental abuse of a person, what part of the allegations of this complaint would they then defend? Well, they would be defending the merit of whether or not you can prove a physical abuse. If you can prove a mental or physical abuse, they don't cover it. They don't cover physical or mental abuse. They don't cover physical or corporal punishment. They don't cover sexual molestation or contact. And that's all that's alleged in here. Well, and perhaps you and I aren't disagreeing on that. I believe when we focus on the drug allegations, it doesn't necessarily rise to physical abuse. But that's what it is too. Well, let me use this as an example. If you don't know any tort for giving somebody a beer or even vodka, I don't know any tort in Nevada for that, especially. I believe if you were to negligently provide somebody drugs that causes physical injury, that is negligence, and you have a duty of reasonable care. My analogy, Your Honor, would be if you have a complaint alleging murder and a complaint alleging negligence, you can't assume that the only thing that's going to be proven is truth. Obviously, that is what's going to happen. Frankly, that's the trouble you have in this complaint. Nobody alleges negligence on the part of the two kids. They allege the negligence on the part of the parents. And the parents' negligence, if at all, is derivative of what their kids do or didn't do. And their kids, there's nothing in this complaint that says anything other than sexual molestation or contact and physical or mental abuse. And, therefore, the insurance company need not defend nor pay. Well, I would say it's not artfully pled in that context. But if you look at 39 in Paragraph 40, is a general negligence claim against all of the defendants. In Paragraph 41 as well. Well, just a minute. We'll read that. I read that, and I guess I'm having a tough time understanding how those children were under supervising, parenting, or controlling. God, they were about supervising negligently and trusting, which is all about Paragraph 40. I mean, you're focusing on the parents. We're trying to focus on the kids now. What did the kids do that is outside of, in this complaint, sexual molestation or contact, corporal punishment, or physical or mental abuse? The allegation in Paragraph 41, plaintiff or persons like plaintiff may act with cause harm including but not limited to the sexual assault. And that's in Paragraph 41 of the complaint. I'm not here to defend that this is overtly present, but the job of the insurance company is there's a potential. And, again, the absurd in this context doesn't control what's in the complaint, and that's why the law says you have to broadly look at these complaints. I understand where you are. I've been in your job many times, and I know. But I'm still having a tough time looking at the complaint and what was alleged and then comparing it to the allegations that they do not defend. This is not about criminal or civil. This is about sexual molestation they do not defend. Sexual contact they do not defend. Corporal punishment they do not defend. Physical abuse they do not defend. Mental abuse they do not defend. And if they don't defend, they don't pay. And then you look at the allegations of the complaint. And my point would be that based upon Paragraph 41, based upon the drug allegations, there's sufficient evidence to infer physical harm. And the insurance company's response to that should be a reservation of rights. When you look at Paragraph 41, you're really not talking about that. That's had a duty to take precautions and properly supervise and entrust the homes in question to prevent the injuries to persons like the plaintiffs. But that's the parents. That's not the kids. The acting would be from acts that would cause harm. And I go back to the drug allegations out here. That were to prevent the kids from doing acts causing harm, including sexual assault. That's the parents. Including and not limited to the sexual assault, which in my view would be the drug allegations. That's not physical abuse. That gives enough. I'm not here to defend that the complaint was artfully worded. I'm here to find something in the complaint that alleges these kids did something different than the things they were not to cover. If the kids in issue poured poison down the throat of the victim, would that be physical abuse? I believe that would be physical abuse. So it's not physical abuse if they pour alcohol or drugs down the throat or shootshot the arm of the victim, but it is if they pour poison down the throat and do that kind of escapism. It's all physical abuse. I don't think that the introduction of the drug is physical abuse. Obviously the context, which would be subject for further discovery. I mean, if in fact they were lying, as your example, I would agree that's physical abuse. But that's not what alleged. It's alleged that it was introduced in further facts and established what that means. Okay. Unless you have further questions, I'll reserve my time. May it please the Court. My name is Michael Wong. I'm counsel for a believing American family. We are grateful for this opportunity to address the Court. I believe that the issues that you have been addressing are exactly what the issues are in this case. It's a simple case about looking at and construing the exemption in the cover, the exclusion in the contract, and comparing that to the complaint that was filed in state court. From day one, the complaint that was filed in state court has been an attempt to draft a complaint that would reach, hopefully set forth a cause of action that the insurance company would have a duty to defend. And from the beginning, we have been trying to go to the process of claiming, introducing the plan to drugs and money. It is self part of the physical harm that is not abuse. Do you agree with that? I would not agree with that. Number one, I think even if they introduce it to the drug, to the swab, or the fudge, to the complaint, if you read every word in the complaint, you can read the factual allegations. They put some of that stuff in there that is supposed to be led up to sexual abuse. But when you get to their causes of action and you read what they actually stated, they did nothing except sexual abuse and hanging sexual acts. They said that he witnessed these other boys using drugs. They didn't read the complaint to suggest that they required him to use the drugs. Whatever they did to him, it was all sexual abuse, and at the very least, physical abuse and physical trauma. So that's what they have tried to focus on. The arbitrator went and hundred and he doesn't tell us what they are, but apparently he listened to the testimony and tried to separate out everything that he could that could be considered a physical trauma that wasn't the sexual abuse itself. When the complaint is about sexual abuse, it talks about three specific dates on which sexual abuse happened. That's really what it's about. And the way that it's treated is intentionally to try to not say what is the cause of the room. These are intentional torts. And they are intentional. Intentional torts really doesn't have anything to do with this, does it? That's exactly right, your honor. Intentional torts. That's what I was trying to get at in my questioning, and I'm hoping you're not going that way or I'm going to have to think this through. Because it doesn't seem to me whether it's intentional, criminal, civil, whatever it was, you under the insurance policy have excluded sex or molestation. However done. Sexual contact, however done. Corporal punishment, however done. Physical abuse of a person, however done. And mental abuse of a person, however done. Isn't that your argument? That is exactly my argument. They have attempted to make this a negligence versus intentional tort argument. The policy says nothing about negligence or intentional torts. The cases that they have relied upon, all of them deal with the insurance policies that give the exclude coverage for intentional torts. That's not the policy that we have. And the portion of this policy that we haven't talked about yet, which is important, there's also an exclusion exclusion line for any little knock over bodily injury or property damage arising out of any liability imputed to any insured which is otherwise excluded. Their entire complaint is an attempt to impute liability for the children's acts to the parents. The negligence claim doesn't talk about negligence. It talks about premises liability. The strict liability claim, I don't even know what that is. The negligent entrustment claim, how do you negligently entrust a house? That's what they have claimed to. And those are the claims that they have brought. And finally, it's a direct claim of failure to supervise. I understand that a claim of failure to supervise is direct in the sense that it goes to the negligence of the parents in supervising, but this isn't about negligence. This is about whether or not those claims arise out of, the language is arising out of or resulting from a sexual assault. We have a case in Nevada. What about this? What about the district court's decision about concurrent cause doctrine? We don't have a concurrent cause here. That's exactly the reason that all of that case is cited. If there was something else out there that caused the harm that we're talking about and there was a separate cause of action for that somebody else, we would have concurrent causes. What they're trying to argue here is I'm going to separate out the physical trauma from the sexual trauma, and I'm going to say that the physical trauma is a concurrent cause. All of it arises out of sexual assaults. Do you have an argument that you had a duty to pay based on the arbitrator's findings? We don't argue that. That hasn't been the argument so far. This has been a duty to defend case. But if we had no duty to defend, then we have no duty. It's standard, yes. Well, if they haven't argued it, you really don't have to defend it. My worry was they've argued it, and if they have argued it and the arbitrators come up with all of these different theories under which someone would need to pay, now we're really talking about applying the language of the policy to the arbitrator's decision on a duty to pay, are we not? That would be the argument, but we're not here on a duty to pay. It was a duty to defend case. But even if we were to suggest the argument that a insurance company has scalped by Nevada. The reason I say this is because of the California cases that say over and over again that the duty to defend is broader than the duty to pay. Yes. That is also the law in Nevada. The duty to defend is much broader than the duty. That duty to defend is that you must defend if there is a potential for indemnification. And when the potential for indemnification ceases, the duty to defend ceases. There is no potential for indemnification based on the complaint in this case. And even, well, he talks about based on the complaint and facts which came to the knowledge of the insurance company until the arbitration. Now, I didn't see that alleged in any case. I didn't see any of that as something I've needed to look at. But did I miss something? Were there facts that came to the knowledge of the insurance company upon which he can now assert his duty to defend? The facts that he thinks came to the knowledge of the insurance company were the findings of the arbitrator that because the acts, because the children could not act intentionally under the law, under the criminal law, that their acts were negligent. Again, making that dichotomy of if it was negligent, it's covered by the law. If it's intentional, it's not. Well, two fallacies there. The policy doesn't cover negligent acts. It covers occurrences, and occurrences are defined as accidents. This is clearly not an accident. Nothing that parents did was an accident. You've not studied that. I don't think you really have to go there. I think you can just go with the language that you've got. It's got to be sexual molestation, sexual contact, corporal punishment, physical abuse. It's any of those you don't pay. It's exactly that. You don't have to go to accident because, I mean, I'm not saying how one would come out, but if they're a kid that might be in an accident under some cases, would you not suggest that a kid might have an accident even with intent? I don't believe that any facts that we have in this case would suggest that there was any accident involved in this sexual contact. I guess there could be, between children, sexual conduct that could because negligence is somewhat narrower than an accident under the case law. But under the facts that we have here, even assuming all of the facts that the arbitrator found, which, of course, there's no allegations that the insurance company was aware of those at the time the decision was made. But even if they were aware of every fact that I'm aware of, that this record demonstrates, there simply is no basis for a duty of evidence. There's no possibility of a duty to identify. Without the possibility of a duty to identify, that's the end of the discussion. So all of the red herrings here raised are attempts to make an end run around these policy provisions, which Connor continues to read correctly. There isn't a way to make an end run, in this case, around the policy provision. There's simply nothing in this policy that would cover the conduct that has been alleged in this complaint. And even if you go beyond the complaint, there is nothing in any of the conduct that has been proven. They under-add, from the beginning, all of the arbitrator's findings of 150 acts of physical trauma. The arbitrator didn't even tell us what those are. You're simply one sentence in the arbitration board where the arbitrator says, listen to the testimony. I have found at least 150 acts of physical trauma and 21 acts of sexual trauma, and they're separate from each other. Because he was trying to separate them out on the false theory that if there was physical trauma, that would be covered by the policy, and sexual trauma would not be covered by the policy. But the physical trauma is also the result of physical and mental abuse of a person as alleged in this complaint, even if we could take that as the basis for separating out the reports, we have no complaint how the arbitrator went about separating out these acts. It's a position that if they did take drugs or alcohol, that's physical abuse. Everything that went on was either sexual or physical abuse, and it's all combined into one. And more importantly, back to the square one, this case is this simple. It's an exclusion which needs to be compared to a complaint. And if you read that complaint fairly, it doesn't allege physical abuse. It alleges sexual abuses on three different occasions, and the same allegations are in each of the four causes of action that are pleaded, and each of them sound in negligence on the title. But there are no allegations of negligence within the complaint itself. There's no duty that they can identify that was breached. What they have done is characterized intentional acts of sexual immolation as something else in order, specifically and for the purpose of finding coverage. But there isn't any coverage under this policy because it is, it wouldn't be more broad theory. I'd like to suggest that the case of Cornell is directly, it's an eradication, it's directly on point, and it does not turn on the age of the person who is doing the act, 19-year-old in that case. It turns on, you cannot impute to the parents or to any other insured, under the exact same policy as we have, you can't impute that conduct because it's still, whoever committed the sexual act, the negligence to claim whatever is supposedly alleged, these people are licensed out of non-sexual abuse. Even if the people being charged with the separately pleaded claim are not the ones who committed the abuse, the claim against them arises out of the claim of sexual misconduct. In this case, people, physical misconduct in this case, if you want to separate them out, either way, you come up with the same thing, you cannot. This is an attempt to plead liability on the part of the parents, not on the part of the children. You don't even see an attempt to plead liability on the part of the children. This is an attempt at products liability, at homeowner's liability, premises liability. You've got all kinds of language in there about premises liability. All of this is irrelevant in this case because this isn't about negligence or intentional tort. This is about whether or not the specific exclusion applies to the language of their specific state court complaint. And that is it. Thank you. Thank you. I guess the point I would make is in analyzing the duty to defend one party's complaint, but when you have an arbitrator's finding to, in our view, establish coverage under the doctrine of concurrent prosecution. And I would point that out because the arbitrator's findings were distinct physical trauma. It wasn't all arising from sexual acts. The arbitrator, based upon expert testimony, found that these children did not have the capacity to commit sexual molestation and the like. Physical trauma is not physical abuse. In my mind, when you look at the plain ordinary term of abuse, that requires an intent to foot harm, which is not present in the arbitrator's findings. I understand the panel's view on the complaint, but to take a moment in isolation when the facts were uncovered differently. So, I mean, our view would be the duty to cave exists based upon the arbitration. So, by logic, the duty to defend has been breached. The defendants here claim that upon the arbitrator's decision separating physical impact from sexual abuse, the tender of defense was again made. So, therefore, the insurance company at that point should have undertaken defense. Should have undertaken a defense investigation. I mean, is it a political matter or what not? At that point, what would the defense win? The arbitrator's decision was made. The question then would be would the indemnification pay? At that point, it's duty to pay. That's not in front of us, right? Well, I think it is directly and indirectly. Oh, that had just been answered my question. This was a declaratory judgment action, which was brought by the insurance company. Speaking declaratory to release, that they did not have a duty to defend based on this complaint. There was no arbitrator decision at that point. So, it was submitted thereafter. And my point would be if there's a duty to pay, there's not necessarily a duty to defend. Because a duty to pay is drawn out of pay. Well, and this is a separate issue. Our view is that the arbitrator's finding creates coverage under the law. Yes, counselor, that there's a difference between a duty to defend and a duty to pay. And I trust my honorable colleague here who says that one's whiter than the other. But if, in fact, one has determined on a deck action he has no duty to defend, then the duty to pay is something you've got to decide in another case. This is not in front of us here. The duty to defend is here. Well, I guess my response to that is that based upon the arbitrator's findings that were submitted to the court, that created evidence of coverage available under the policy, which would necessarily have triggered the defense. What you're doing, respectfully, I think is... He frankly said the duty to pay is not in front of you, Judge. I heard him say that. Disagree? You disagree? Well, I disagree in the sense that, again, if there's indemnification available under the policy, the duties that breach, what the damages are flowing from that breach is a separate issue. And maybe we're taking... I mean, that's a more chronological question. Sure. At the time of the submission of the declaratory relief action, had the arbitrator made a decision? The arbitrator, at the time of the briefing, the arbitrator had not made a decision. No. Please, that beats my question. No, that's correct. At the time of the submission to the court of the declaratory relief action and at the time of the decision of the Supreme Court of the declaratory relief action, had the arbitrator made a decision? Before the decision, the arbitrator's findings had been presented to the court. It had been? It had been. And that's on... If you'd like to dock an entry, I can give that to you. At what point did the decision... The arbitrator's decision was filed a month before the District Court Crimes Summary Test in December. Is that... Yes, it was filed, the deck action was filed in June 2014 before the arbitration. Thank you very much. In the case of the Crimes, the family mutual versus separate will be submitted to the commander. We will see that in recess until tomorrow at 9 o'clock.
judges: Bea, N.R. Smith, Lynn